## SYLVANUS WOOD *vs.* INHABITANTS OF BURLINGTON.

W. agreed with a town " to support all the town and state paupers, who have or shall have their legal settlement in said town, for and during the term of five years; to pay all funeral expenses of said paupers, and be at all the expense of transporting and removing ; and to pay all other expenses whatever, that may arise concerning the expense of said paupers, except that of ascertaining their legal settlement."

*Held,* that W. was bound to pay the expense incurred by the town for the support, in the house of correction in the city of Boston, of a person whose legal settlement was in said town. *Held* also, that W. was bound to pay the costs incurred by the town, in a suit by the city of Boston to recover for the support of such person; the town having given W. notice of the claim of said city.

ASSUMPSIT to recover the sum of $ 121·09. The case was submitted to the court upon the following facts :

On the 20th of March, 1833, the plaintiff executed a bond to the defendants, in the penal sum of $ 3000, with this condition, viz. "if the said Wood, shall support all the town and

state paupers, (excepting one Venus Roe,) who have or shall have their legal settlement in said town, during the term of five years, from and after the first day of April next, to the acceptance of the overseers of the poor of said town for the time being ; shall pay all funeral expenses of said paupers, and all expenses of transporting and removing, and pay all other expenses whatever, except that of ascertaining their legal settlement, then this bond to be void, otherwise to remain in full force." For the performance of this condition, the defendants engaged to pay the plaintiff $ 500 *per annum.*

Ruth Patio, a healthy, able-bodied, single woman, and of about middle age, had her legal settlement in the town of Burlington. From the 1st of January, 1836, to the 2d of May, 1838, said town paid to the city of Boston a sum amounting, with interest, from the times of payment to the last mentioned day, to $ 115·13, for the support of said Ruth in the house of correction in said city, where she had been committed for offences, at different times during the above period. The defendants were served with due notice of the commitments of said Ruth, and gave due notice thereof to the plaintiff. The defendants also paid the city of Boston the further sum of $ 5·96, costs of suit on the first bill which the city presented to them for the support of said Ruth, as aforesaid, which bill said city sued, on the defendants' neglect to pay ; and the defendants settled the same, before the return day of the writ ; having, before the bill was put in suit, duly given notice to the plaintiff that the same was presented to them for payment.

The town deducted and retained the above sums of $ 115·13, and $ 5·96, from the amount due to the plaintiff under their said engagement ; insisting that, by the terms of the condition of said bond, he was liable to pay them said sums.

The plaintiff performed the condition of his said bond, to the acceptance of the overseers of the poor of the town, except in the matter of Ruth Patio, as above set forth, and kept and supported town and state paupers on a farm in Burlington, where he had full employment for all of them.

The town, at several legal meetings, voted to pay the plaintiff

the sum demanded by him in this suit; and at several other meetings, voted to reconsider and annul their former votes on th's subject.

It was agreed by the parties, that the plaintiff should become nonsuit, or that judgment should be rendered for the plaintiff for such sum as the court should direct, according to the opinion of the court on the foregoing facts.

*J. Dana,* for the plaintiff.

*Farley,* for the defendants.

SHAW, C. J. The plaintiff entered into a contract with the defendant town, to support the poor of the town, and pay all expenses incident thereto, with certain exceptions, for the term of five years; and the question in this case arises upon the construction of that contract. During the term, the town were called upon, by the city of Boston, to reimburse expenses incurred by the city, for the support of one Ruth Patio in the house of correction. It appears, that she had her legal settlement in the town of Burlington, that she was committed to the house of correction, and by force of the statute of 1826, *c.* 142, the town was compellable to pay; and, after demand made, and suit commenced, and notice given to the plaintiff, who declined paying, the town did pay the sum in question, and deducted it from the sum due by contract to the plaintiff.

The plaintiff contends, that Ruth Patio was not a pauper, within the terms of his contract, but was a convict; that being an able-bodied and healthy single woman, she did not require aid of the public for her support; and that his contract manifestly looked to the support of the poor, on his own farm in Burlington, and not in distant places; and that if Ruth Patio had asked for assistance in the town of her settlement, her labor might have compensated the plaintiff for her support.

It is not easy to ascertain from the contract, whether the parties had exactly such a case as the present in their minds, or not. If they used terms which include it, it must be taken to be their contract, and their language must be construed according to common and popular usage.

The agreement is set forth, in the recital which precedes the

condition of the plaintiff's bond, thus ; " said Wood has agreed with the said inhabitants of Burlington, to support all the town and state paupers " (excepting one named) " who have or shall have their legal settlement in said town, for and during the term of five years, &c. to the acceptance of the overseers ; to pay all funeral expenses of said paupers, and to be at all the expense of transporting and removing, and to pay all other expenses whatever, that may arise concerning the expense of said paupers, excepting that of ascertaining their legal settlement." The same agreement is repeated in nearly the same terms, in the condition of the bond.

It is obvious, in the first place, that this agreement cannot be construed literally ; because it is contradictory to itself. It is " town and state paupers, having their legal settlement," &c. A state pauper cannot have a legal settlement in any town ; one who has such settlement is not a state pauper. Some construction, therefore, must be put on this clause, different from the literal meaning. It is clear, we think, that there is nothing in the contract, whatever might have been in the expectation of the parties, to limit the responsibility of the plaintiff to those who were to be supported on the plaintiff's farm, or in Burling-. ton. It provides that he shall be at the expense of removal, and pay all other expenses whatever, concerning such paupers, except that of ascertaining their legal settlement. It seems quite clear, that the plaintiff was to support some state paupers ; but who were they ? The contract says, those having their legal settlement : That is impossible ; there are none such. There seems no reasonable construction but this — those state paupers, whom the town, in the first instance, would be bound by law to relieve. And this, no doubt, is what the parties understood by the contract, and acted on as such. It is manifest, therefore, that this contract was not expressed with strict legal accuracy.

What did these parties understand by paupers ? We think they intended generally those persons, whom by law the town was bound to support or relieve, by the operation of general laws. By the statute of 1826, *c.* 142, every town, under certain limitations, was bound to pay for the support of convicts in

any house of correction, who had their legal settlement in such town. Though they are confined as convicts, they are supported as paupers. Their expenses are charged upon a distant town, not because such town is in any degree responsible for their crimes, but solely because it is bound to support them, when from any cause, be it age, sickness, imbecility or con-finement, they are unable to support themselves. An expres-sion is relied upon, in the opinion of the court in *Boston* v *Westford*, 12 Pick. 21. It was there said of persons so con-fined, " the defendants could not proceed to remove them. They were not kept and supported as paupers in distress, stand-ing in need of immediate relief, but as criminals and convicts." These expressions were correct, taken in connexion with the subject matter, and the case to which they were applied. The question was, whether the city of Boston had complied with the directions of law, in having their account audited, and giving notice thereof, and making a demand fourteen days before suit brought, as the prerequisites to the bringing of an action. What the court there say was, that they were not mere paupers or common paupers, who could be removed on notice, but they were to be supported in a particular manner, and the statute pointed out how the town of their legal settlement should be charged ; and if such course was not followed, the condition precedent was not performed, and no action would lie. The construction we adopt, therefore, is not in opposition to the case cited. Nor is it, we conceive, inconsistent with the definition or description of " paupers," as given in an opinion of this court, to the Honorable Senate, 11 Pick. 540 ; though that opinion turned upon the technical meaning of the word " paupers," as used in the constitution. They are designated as " persons re-ceiving aid and assistance from the public, under the provisions made by law, for the support and maintenance of the poor." Persons thus confined in houses of correction are supported as paupers. The responsibility is cast upon those who would be liable for their support, in case of being reduced to want by sickness, or any other cause ; those who would be liable by law for their support, " if a pauper," or by the town or city where

such person shall have a legal settlement. The latter expression has direct reference to the poor laws, and derives it meaning from them.

It appears that Ruth Patio had her legal settlement in Burlington, and that town was by law liable to her support. Her health and strength could not avail her, when placed by law in close confinement, where she could not earn a subsistence. The city were by law to support her, in the first instance, because she stood in immediate need of relief there, and the town were bound to reimburse them, because, under the poor laws, her settlement was there. The law regarded her, for the time being, as a pauper. We think, that by the terms of this contract, the plaintiff was bound to meet this expense, and generally to pay all the other expenses which the town might incur for the support and maintenance of their poor.

In regard to the costs of suit, paid by the town, we think that this sum must follow the principal. The town gave the plaintiff notice of the claim, and of the demand made upon them; it was his duty to pay the amount within the time limited by law, and they had a right to presume that he would do it. If he had so done, the expense would not have been incurred. This expense was a consequence of his own default, and he cannot cast it on the town.

We think there was nothing in the conflicting and contradictory votes of the town, which was sufficient to render them liable, when, as it now appears, they were not liable by their contract.

*Plaintiff nonsuit.*